1
2
3
4       UNITED STATES DISTRICT COURT
5       EASTERN DISTRICT OF WASHINGTON

6   GARY MATTHEW DECHENNE,                No. 2:12-CV-0607-JTR

7           Plaintiff,
                                          ORDER GRANTING
8                                         DEFENDANT'S MOTION
            v.                            FOR SUMMARY JUDGMENT
9

10  CAROLYN W. COLVIN,
11  Commissioner of Social Security,

12          Defendant.
13

14      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

15  No. 17, 23.  Attorney Donald C. Bell represents Gary M. DeChenne (Plaintiff);

16  Special Assistant United States Attorney Lars J. Nelson represents the

17  Commissioner of Social Security (Defendant).  The parties have consented to

18  proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative

19  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for

20  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

21                          **JURISDICTION**

22      Plaintiff filed an application for Disability Insurance Benefits on November

23  12, 2009, and an application for Supplemental Security Income on November 19,

24  2009, alleging disability since October 1, 2009.  Tr. 113, 117.  Plaintiff alleges

25  disability due to right tibial fracture.  Tr. 132.  The applications were denied

26  initially and upon reconsideration.  Administrative Law Judge (ALJ) Moira

27  Ausems held a hearing on April 21, 2011, Tr. 38-68, and issued an unfavorable

28  decision on August 15, 2011, Tr. 24-33.  The Appeals Council denied review on

October 23, 2012.  Tr. 1-5.  The ALJ's August 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on November 29, 2012.  ECF No. 1, 5.

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on June 23, 1976, Tr. 117, and was thus 33 years old on the October 2009 alleged onset date.  Plaintiff has an eleventh grade education, Tr. 137, and last worked in the construction industry in 2008, Tr. 45.  Plaintiff testified he continues to work on a part-time basis helping at his parents' shaved ice stand. Tr. 47, 57.  He indicated he could work at the shaved ice stand for "probably six hours" but only with a break each hour to elevate his leg.  Tr. 57.  Plaintiff testified he needs to elevate his leg for a period of 10 minutes, once every hour or two.  Tr. 54-55.  He stated he could sit for two to four hours at a time, walk probably 30 to 50 yards without carrying anything, and stand for about 10 minutes at one time. Tr. 49.  However, Plaintiff testified he rides his bike "everywhere," and explained that "all I do is ride my bike."  Tr. 50.  He indicated he can do all household chores, but it may take him longer to complete the tasks.  Tr. 60.  Plaintiff attended and completed drug and alcohol treatment, Tr. 51, but apparently continues to drink, Tr. 59.

Plaintiff's girlfriend, Kristie Galloway, also testified at the administrative hearing.  Tr. 61-63.  When asked if there were any problems or limitations she would describe other than those Plaintiff had already discussed, she responded "I would say the same things he has said."  Tr. 62.  Upon prompting by Plaintiff's attorney, Ms. Galloway indicated Plaintiff's self-esteem had gone down.  Tr. 62.  She further indicated Plaintiff had anger issues because he could no longer do what

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

he used to be able to do, and related that they would have problems when Plaintiff self-medicated with beer.  Tr. 62-63.

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date.  Tr. 26.  The ALJ determined, at step two, that Plaintiff had the following severe impairments:  right tibial plateau fracture, status post-surgical repair; adjustment disorder with depression; and polysubstance abuse disorder in early reported remission.  Tr. 26.  At step three, the ALJ considered Sections 1.02 (major dysfunction of a joint), 1.03 (surgical arthrodesis of a major weight-bearing joint), 12.04 (affective disorders) and 12.09 (substance addiction disorders) and concluded Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 27-28.

The ALJ assessed Plaintiff's RFC and determined Plaintiff could perform light work with the following limitations:  he can perform tasks that involve no more than 2 hours of standing/walking in an 8-hour workday (with normal breaks); his ability to sit is not restricted; he can occasionally stoop, balance, or climb ramps or stairs; he can perform infrequent squatting, kneeling, or crawling; he must avoid climbing ladders, ropes or scaffolds; he must avoid uneven ground or hills and concentrated exposure to workplace hazards, such as unprotected heights and moving machinery; and he can perform no more than semi-skilled work with a specific vocational preparation (SVP) level of 4 or less.  Tr. 28.

At step four, the ALJ found Plaintiff incapable of performing his past relevant work.  Tr. 31.  However, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 32-33.  The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

Act at any time from October 1, 2009, the alleged onset date, through the date of the ALJ's decision, August 15, 2011. Tr. 33.

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the

evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) not consulting a medical expert in either psychology/psychiatry or orthopedics at the administrative hearing; (2) failing to account for all of Plaintiff's mental health limitations as reported by Dr. Goodwin; (3) failing to properly consider Dr. Cummings' opinion

after surgery that Plaintiff was "100% disabled" as well as Dr. Cummings' later assessed physical limitations; (4) improperly rejecting Plaintiff's testimony regarding his impairments; and (5) failing to consider or address the statements of the lay witness, Ms. Galloway.  ECF No. 17 at 13-20.

## DISCUSSION

**A.   Physical Limitations**

Plaintiff asserts the ALJ erred by failing to conduct a proper step-five analysis by not accounting for all of his limitations supported by the evidence of record.  ECF No. 17 at 15-16.  Plaintiff specifically contends the ALJ did not properly consider the after-surgery opinion of Dr. Cummings that Plaintiff was "100 percent disabled" or the later opinions of Dr. Cummings that Plaintiff continued to have numerous limitations.  ECF No. 17 at 16.

On October 1, 2009, Joel Cummings, M.D., saw Plaintiff in the hospital emergency room following Plaintiff's bicycle accident.  Tr. 206-208.  Plaintiff was diagnosed with right knee tibial plateau fracture, "a severe, relatively complex injury," and surgery was planned.  Tr. 207.  Dr. Cummings performed the surgery on Plaintiff's right knee on October 6, 2009.  Tr. 211-213.  It was reported that Plaintiff tolerated the procedure well, and the knee appeared to be quite stable.  Tr. 213.  Dr. Cummings completed a physical evaluation form on October 12, 2009, which stated that Plaintiff was severely limited and work activity limitations were expected to last for three to four months.  Tr. 282-285.  On October 23, 2009, Dr. Cummings reported Plaintiff had experienced a very severe injury to his knee that would "require some time and rehabilitation."  Tr. 243.  It was noted that Plaintiff was doing reasonably well but would remain strictly nonweightbearing at that time.  Tr. 243.  On October 28, 2009, Dr. Cummings indicated Plaintiff had undergone four surgical procedures related to the knee injury and had required hospitalization for two weeks.  Tr. 240.  He stated Plaintiff was "100% disabled" at that time.  Tr. 240.

On November 20, 2009, Dr. Cummings indicated Plaintiff reported minimal pain and an area of Plaintiff's incision that previously had some drainage had now healed. Tr. 247. Dr. Cummings advised Plaintiff to "push the knee to tolerance in regard to range of motion," but still wanted Plaintiff to remain nonweightbearing. Tr. 247. On December 24, 2009, Dr. Cummings advised Plaintiff to progress to weight bearing activity as tolerated. Tr. 248. A physical evaluation form completed by Dr. Cummings at that time indicated Plaintiff had "improved" with treatment, Tr. 267, and was limited to sedentary level work at that time, Tr. 268.

On February 24, 2010, and again on April 9, 2010, Dr. Cummings reported Plaintiff was doing "reasonably well" and recommended Plaintiff use his knee for activities as tolerated. Tr. 270-271. Dr. Cummings filled out a physical evaluation form on April 9, 2010, which stated Plaintiff's condition was "stable," Tr. 277, and he was limited to light exertion level work activity, Tr. 278. On June 1, 2010, Dr. Cummings filled out a form regarding Plaintiff's physical capacity. Tr. 274-275. Dr. Cummings stated Plaintiff's condition was stable and opined Plaintiff could stand for two hours in an eight hour work day, sit for eight hours in an eight hour work day, lift 50 pounds occasionally and lift 20 pounds frequently. Tr. 274.

The ALJ determined Plaintiff had the physical RFC to perform light exertion level work with the following limitations: he can perform tasks that involve no more than 2 hours of standing/walking in an 8-hour workday (with normal breaks); his ability to sit is not restricted; he can occasionally stoop, balance, or climb ramps or stairs; he can perform infrequent squatting, kneeling, or crawling; he must avoid climbing ladders, ropes or scaffolds; and he must avoid uneven ground or hills and concentrated exposure to workplace hazards, such as unprotected heights and moving machinery. Tr. 28. As indicated by the ALJ, Dr. Cummings' treatment notes, as summarized above, include no restrictions inconsistent with the ALJ's RFC assessment. Tr. 30. Although the October 2009 statement by Dr. Cummings indicated Plaintiff was "100% disabled" at that time, the ALJ explained

that the assessment was provided less than a month following Plaintiff's severe knee injury and was not an endorsement of long-term disability.  Tr. 31.  In fact, Dr. Cummings' October 12, 2009, physical evaluation form indicated Plaintiff's work activity limitations were expected to last for only three to four months.  Tr. 282-285.  As further indicated by the ALJ, the October 2009 statement that Plaintiff was 100% disabled is not consistent with Dr. Cummings' subsequent functional assessments.  Tr. 31; *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000) ("A treating physician's most recent medical reports are highly probative").  Dr. Cummings' medical records reveal Plaintiff progressed from nonweightbearing activity immediately following surgery in October 2009, to sedentary exertion level activity in December 2009, to light exertion level activity in April 2010 and finally to medium exertion level activity in June 2010.  Tr. 243, 268, 278, 274.

The ALJ appropriately accorded "significant weight" to Dr. Cummings' most recent functional assessment, Tr. 30, and the record does not support a more restrictive finding than Plaintiff being limited to a range of light exertion level work activity.  The undersigned thus finds the ALJ's physical RFC determination is in accord with the weight of the record evidence and free of legal error.

**B.    Mental Limitations**

Plaintiff also argues the ALJ erred by failing to properly consider the severity of Plaintiff's mental health limitations.  ECF No. 17 at 15.  Plaintiff specifically asserts the mental health deficiencies assessed by Dr. Goodwin should have been credited by the ALJ in this case.  ECF No. 17 at 15-17.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If a treating or examining physician's opinion is not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by

1    substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th
2    Cir. 1995).
3            On July 6, 2010, following a one-time examination, James D. Goodwin,
4    Psy.D., completed a Psychological/Psychiatric Evaluation form.  Tr. 286-291.  Dr.
5    Goodwin diagnosed Major Depressive Disorder, Recurrent Moderate; ETOH
6    Abuse; Cannabis Abuse; right leg dysfunction due to accident; and front teeth
7    missing due to accident; and gave Plaintiff a GAF score of 37.[1]  Tr. 288.  Dr.
8    Goodwin checked a box indicating Plaintiff was chronically mentally ill and
9    opined that Plaintiff was severely limited in three areas of functioning and
10   markedly limited in two additional areas of functioning.  Tr. 289-290.
11           On October 1, 2010, treating physician Kelly Gillespie, M.D., indicated
12   Plaintiff had "some mild depression" secondary to his physical symptoms, "but not
13   enough that he would want to be on medication for it."  Tr. 303.  On October 29,
14   2010, Dr. Gillespie described Plaintiff as "pleasant and interactive" and did not
15   mention any psychological issues.  Tr. 305.  On November 15, 2010, Dr. Gillespie
16   indicated Plaintiff had been attending physical therapy for his leg pain, it had
17   helped "significantly," he was continuing to attend physical therapy, and he was
18   happy with how it was going.  Tr. 309.  Plaintiff was again described as "pleasant
19   and interactive" and there is no mention of psychological issues.  Tr. 309.  On
20   December 28, 2010, Dr. Gillespie once again described Plaintiff as "pleasant and
21   interactive" and did not mention mental health concerns.  Tr. 314.
22           The ALJ gave "no significant weight" to Dr. Goodwin's assessment of
23   substantial mental health limitations because it was based on a one-time evaluation

24   _____

25           [1]A GAF of 40-31 indicates "[s]ome impairment in reality testing or
26   communication OR major impairment in several areas, such as work or school,
27   family relations, judgment, thinking, or mood."  *See* Diagnostic and Statistical
28   Manual of Mental Disorders 32 (4th ed. 1994).

and was inconsistent with the record as a whole. The ALJ found the medical reports of treating physician Dr. Gillespie more in accord with the evidence of record regarding Plaintiff's mental functioning.

As noted by the ALJ, Dr. Gillespie did not find Plaintiff's mental symptoms particularly serious, finding Plaintiff's mental symptoms included "some mild depression" secondary to his lower extremity symptoms, but not enough to require medication. Tr. 31. The fact that Plaintiff has no reported history of psychiatric hospitalizations or mental health treatment substantiates Dr. Gillespie's finding in this regard. Tr. 31. On the other hand, Dr. Goodwin's assessed limitations on the form report following the one-time examination are not supported by objective findings or other medical evidence of record. An ALJ may discredit physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), or by objective medical findings, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ provided specific and legitimate reasons, supported by substantial evidence, for according "no significant weight" to Dr. Goodwin's assessment. Tr. 31. The record does not support a more restrictive mental health functioning determination than Plaintiff being limited to performing no more than semi-skilled work with a specific vocational preparation (SVP) level of 4 or less. Tr. 28. The undersigned finds the ALJ's mental RFC determination is in accord with the weight of the record evidence and free of legal error.

## C.    Develop the Record

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 17 at 13. Plaintiff specifically argues the ALJ should have consulted a medical expert in orthopedics and/or psychology/psychiatry at the administrative hearing to develop the record with respect to Plaintiff's physical and/or mental limitations. ECF No. 17 at 13-15.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). However, it is Plaintiff's duty to prove he is disabled. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). The Code of Federal Regulations explains:

> [y]ou have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a); *see also,* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150. As discussed above, the record does not support a more restrictive finding than Plaintiff being limited to performing a range of light exertion level, semi-skilled work. The ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Accordingly, the ALJ did not err by failing to consult a medical expert at the administrative hearing to further develop the record with respect to Plaintiff's physical and/or mental capabilities.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

**D.    Credibility**

  **1.    Plaintiff**

Plaintiff also argues the ALJ erred by failing to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his pain.  ECF No. 17 at 18-19.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not fully credible to the extent they were inconsistent with the ALJ's RFC determination.  Tr. 29.

The ALJ first indicated the objective medical evidence did not support Plaintiff's allegations of total disability.  Tr. 30.  A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  As discussed above, the ALJ properly assessed the medical records in this case.  Plaintiff's complaints of disabling pain and mobility issues

are not entirely consistent with the objective medical findings contained within the record which demonstrate Plaintiff is capable of performing a range of light exertion level, semi-skilled work. *Supra*. The credible medical evidence of record does not support Plaintiff's claim of disabling limitations; therefore, it was appropriate for the ALJ to conclude the objective medical evidence does not support the level of limitation Plaintiff has alleged in this case.

The ALJ next noted Plaintiff's indication that he can perform certain activities of daily living was inconsistent with his assertion of total disability. Tr. 30. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated Plaintiff's allegations of disability were inconsistent with his testimony that he rides his bicycle "everywhere," he is able to ride his bicycle up hills without difficulty, and all he does is ride his bike. Tr. 30. Plaintiff also acknowledged he was able to perform all household chores, Tr. 30, 60, and carves sticks for a hobby, Tr. 30, 59. This evidence of Plaintiff's "significant physical activity" and his ability to perform chores and hobbies is inconsistent with his complaints of disabling pain and issues with mobility.

Lastly, the ALJ indicated Plaintiff's unreported part-time work was inconsistent with his allegations of disability. Tr. 30, 26. The ability to perform part-time work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted a plaintiff's testimony because she had recently worked as a personal caregiver for two years and had since sought out other employment). It is uncontested that Plaintiff has continued to work part-time at his parents' shaved ice stand during the Spring/Summer months. Tr. 47, 57.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in

evidence.  *Richardson*, 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).

After reviewing the record, the undersigned finds the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  The ALJ did not err by concluding Plaintiff's assertions of disabling functional limitations were not fully credible in this case.

### 2.    Lay Witness

Plaintiff further contends the ALJ erred by not making proper credibility findings as to the testimony of the lay witness, Ms. Galloway.  ECF No. 17 at 19.

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), citing 20 C.F.R. § 404.1513(e)(2).  The ALJ may not ignore or improperly reject the **probative** testimony of a lay witness without giving reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (emphasis added).

Although the ALJ did not specifically address the statements of Ms. Galloway, when Ms. Galloway was asked at the administrative hearing if Plaintiff had problems or limitations other than those previously discussed during the hearing, Ms. Galloway responded "I would say the same things [Plaintiff] has said."  Tr. 62.  Furthermore, Plaintiff's reply brief admits Ms. Galloway merely concurred with the testimony of Plaintiff, ECF No. 24 at 9, but indicates Ms. Galloway, upon prompting by Plaintiff's attorney, also indicated Plaintiff's self-esteem had decreased,[2] Tr. 62.  The ALJ appropriately considered all of Plaintiff's

---

[2]The ALJ mentioned Plaintiff's "poor self-esteem" when discussing the mental listings in her decision.  Tr. 27.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

functional limitations in this case, and Ms. Galloway's brief testimony does not indicate Plaintiff is limited to a greater extent than that found by the ALJ in this case. *Molina v. Astrue*, 674 F.3d at 1119 (9th Cir. 2012) (finding no basis to determine an ALJ's failure to discuss lay testimony is consequential to the ultimate nondisability determination "where the [lay] testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited"). Accordingly, the ALJ did not err with regard to the lay witness' testimony in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED February 19, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 15